[Civ. No. 17987. Third Dist. Aug. 27, 1979.]

THE PEOPLE EX REL.
EVELLE J. YOUNGER, as Attorney General, etc., et al.,
Plaintiffs and Appellants, v.
COUNTY OF EL DORADO et al., Defendants and Respondents;
WILLIAM CENTER et al., Interveners and Appellants.

**COUNSEL**

George Deukmejian, Attorney General, N. Gregory Taylor and Jan Stevens, Assistant Attorneys General, and Richard M. Frank, Deputy Attorney General, for Plaintiffs and Appellants.

Noble Sprunger, County Counsel, Kronick, Moskovitz, Tiedemann & Girard, Edward J. Tiedemann and Janet K. Goldsmith for Defendants and Respondents.

Lillick, McHose & Charles, R. Frederic Fisher and Harry Pfeifer for Interveners and Appellants.

## OPINION

**PARAS, J.**—May a county ban all rafting and boating on a section of a navigable river highly suited to and much used for such recreational activities? Under the circumstances here presented it may not.

The South Fork of the American River in El Dorado County between Chili Bar Dam and Salmon Falls, a distance of about 20 miles, is in question. Because of its location, flow, lack of obstructions, and the variety of challenges presented by its "runs," it is one of the two most popular whitewater rafting areas in California. When dam construction on the Stanislaus River is completed, there will be no comparable river for rafting in the state. The popularity of this segment of river has increased dramatically in recent years. In 1975, 30 commercial rafting organizations spent approximately 21,000 commercial user days navigating the river. Private user days amounted to about 14,000.

The raft trip usually takes two days. Most of the land on both sides of the river is privately owned and access to the water is limited. Property owners along the river complain of noise, litter, pollution and unsanitary conditions caused by the rafters, as well as of trespassing and fire danger during overnight stops.

On August 10, 1976, the El Dorado County Board of Supervisors adopted an ordinance making it unlawful "to float, swim or travel in said waterway by any artificial means." Fishing or swimming "in a lawful manner," use of the public areas, and exercise of property rights by private owners were declared exempt. Violation of the ordinance was pronounced a misdemeanor punishable by a fine of up to $500 or six months in jail, or both.

Plaintiffs promptly (on Aug. 20) filed suit against county officials to enjoin enforcement of the ordinance and to declare it invalid. Representatives of the commercial rafting organizations moved to intervene as plaintiffs on August 27. The trial court granted the intervention but denied a preliminary injunction. We stayed enforcement of the ordinance pending trial on the merits. Plaintiffs then moved for summary judgment. After the trial court issued an intended decision denying the motion, the parties agreed to submit the matter for decision on the merits based on the pleadings and documents in the record. The trial court found the ordinance established a special-use area and sanitation and pollution

control pursuant to Harbors and Navigation Code section 660 and entered judgment for defendants. This appeal followed.

Plaintiffs contend we must reverse because the ordinance is preempted by state law, and violates common law, constitutional and statutory rights of navigation, and the equal protection clause of the federal and state Constitutions. Defendants claim the ordinance is valid as a reasonable, nondiscriminatory exercise of the county's police power. Neither party contests the court's finding that the disputed section of the river is navigable.

As asserted by defendants, the critical issue is whether the challenged ordinance is a reasonable exercise of the county's police powers. Harbors and Navigation Code section 660 limits these powers to enactment of measures pertaining to "time-of-day restrictions, speed zones, special-use areas, and sanitation and pollution control" which do not conflict with other state laws.

The ordinance is neither a permissible special-use area designation nor a reasonable sanitation and pollution control measure. On its face, it is an absolute prohibition against boating by the public. The record shows that the affected section of the river is not a significant fishing stream, and partly because of restricted access, fishing is light. Swimming in whitewater areas without such artificial means as lifejackets is obviously neither popular nor safe. Thus the ordinance effectively bans virtually all public use of the river.

■ However laudable its purpose, the exercise of police power may not extend to total prohibition of activity not otherwise unlawful. (*Frost* v. *City of Los Angeles* (1919) 181 Cal. 22 [183 P. 342, 6 A.L.R. 468] (ban on supplying water less pure than purest available); *San Diego T. Assn.* v. *East San Diego* (1921) 186 Cal. 252 [200 P. 393, 17 A.L.R. 513] (ban on operation of hospitals treating infectious or contagious diseases within city limits).) Courts are especially sensitive to infringements upon constitutional rights under the guise of exercise of police power. (See *Scrutton* v. *County of Sacramento* (1969) 275 Cal.App.2d 412, 421 [79 Cal.Rptr. 872].) ■ The public's right of access to navigable streams is a constitutional right. (Cal. Const., art. X, § 4; *Marks* v. *Whitney* (1971) 6 Cal.3d 251 [98 Cal.Rptr. 790, 491 P.2d 374].)

The trial court relied on an Attorney General's opinion that an ordinance banning motorboat operations on a portion of the American

River in Sacramento County established a special-use area (45 Ops.Cal. Atty.Gen. 122 (1965)). Its reliance was misplaced. While we express no opinion as to the correctness of the analysis or conclusion in that opinion, we distinguish a situation in which exclusion of power boats from an area better suited to "non-power" uses (*id.,* at p. 123) protects the environment and fosters other recreational uses from the present situation in which *all* forms of "travel by artificial means" are excluded from an area ideally suited to such activity. The El Dorado County ordinance is not a special-use area designation; it is virtually a no-use area designation.

■ While obviously effective to eliminate pollution and sanitation problems, the ordinance goes too far. The county contends use prohibition is the only way to eliminate pollution and sanitation problems. But the logical extension of this hypothesis is the prohibition of all industry, agriculture, and even human habitation, the effect of which would be to eliminate pollution entirely. The public has a right to use the river; it has no right to pollute the river. Reasonable regulation is in order; use prohibition is not. The problems of pollution and sanitation in our increasingly crowded state are difficult and complex, calling for imaginative and sophisticated solutions. But total prohibition of access is an impermissible solution. The ordinance is invalid because it denies the constitutional right of the public to use of and access to a navigable stream.

The judgment is reversed with directions to enter judgment for plaintiffs enjoining enforcement of the ordinance in question.

Regan, Acting P. J., and Reynoso, J., concurred.