[No. D005265. Fourth Dist., Div. One. Mar. 25, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
STEPHEN D. QUEEN et al., Defendants and Appellants.

COUNSEL

Peter B. Clarke and John B. Barriage for Defendants and Appellants.

Edwin L. Miller, Jr., District Attorney, Peter C. Lehman and Stephen R. Robinson, Deputy District Attorneys, for Plaintiff and Respondent.

OPINION

LEWIS, J.—

I

PROCEEDINGS BELOW

On August 4, 1985, the municipal court entered judgments convicting defendants Stephen D. Queen, James Melton and Donald E. Gregory of operating a passenger vessel from the Chula Vista Bayfront Park in violation of section 8.02(a)23 of the San Diego Unified Port District Code (Code).[1] Each defendant was fined $51 and placed on probation for one year. The defendants appealed to the appellate department of the superior court, which reversed their convictions. Upon the defendants' application, the appellate department certified the case to this court under the provisions of California Rules of Court,[2] rule 63(a). Thereafter we ordered a transfer under rule 62(b). We reverse.

II

ISSUES PRESENTED

1. Did the San Diego Unified Port District (District) have authority to enact section 8.02(a)23?

2. Is the discretion granted to the port director (Director) by section 8.02(a)23 subject to a discernible standard?

3. Was there sufficient evidence that the defendants violated section 8.02(a)23?

---

[1] All code references are to the San Diego Unified Port District Code unless otherwise specified.

[2] All rule references are to the California Rules of Court unless otherwise specified.

## III

### Discussion

Section 8.02(a)23 of the Code provides that: "No person shall operate any vessel, boat, or craft carrying passengers, merchandise, building materials, petroleum products, compressed gas, or cargo to or from the landing ramp, float, docks or piers within the Chula Vista Bayfront Park and any point, location, vessel, barge, structure or dock within San Diego Bay without the prior written permission of the Port Director."

The analysis prepared by the District prior to enactment of section 8.02(a)23 explains that the facilities at Chula Vista Bayfront Park "have been built at considerable public expense and are maintained for the benefit of the public for recreational purposes." The analysis goes on to conclude that "it is necessary to adopt a regulation which will prevent abuses and allow for the restoration of these facilities for their intended purpose."

At trial the People established that at separate times each defendant docked at the Chula Vista Bayfront Park in a boat carrying no less than six people.

On appeal the defendants argue that the District does not have the power to regulate use of the facilities at the park, that the discretion granted to the Director by section 8.02(a)23 is too broad, and that there was no proof that they were carrying "passengers" in violation of the ordinance. Although we reject the defendants' attack on the District's regulatory power and the Director's discretionary authority, we reverse because we agree there was no proof the defendants were carrying passengers.

A.   The District Had Authority to Regulate Use of the Facilities at Chula Vista Bay Front Park.

■    Section 55 of the San Diego Unified Port District Act (Act) provides that: "The board shall: . . . (b) Regulate and control the anchoring, mooring, towing and docking of all vessels." Section 56 of the Act provides that: "The board shall make and enforce such local police and sanitary regulations relative to the construction, maintenance, operation and use of all public services and public utilities in the district, operated in connection with or for the promotion or accomodation of commerce, navigation, fisheries, and recreation therein as are now vested in the district."

These provisions are consistent with Harbors and Navigation Code section 6295 which gives a port district the power to: "acquire, purchase,

takeover, construct, maintain, operate, develop and regulate wharves, docks, warehouses, grain elevators, bunkering facilities, belt railroads, floating plants, lighterage, lands, towage facilities, and any and all other facilities, aids or public personnel, incident to, or necessary for the operation and development of ports, waterways, and the district."

It is plain that in enacting sections 55 and 56 of the Act and section 6295 of the Harbors and Navigation Code, the Legislature intended to give the District broad regulatory power over docking and harboring facilities such as those which are the subject of section 8.02(a)23.

In exercising its power the District did not infringe upon the access to waterways protected by article X, section 4 of the California Constitution and Government Code section 39933.[3] ■ Although public access to waterways is entitled to special protection, access is nonetheless subject to reasonable regulation—so long as access is not entirely foreclosed. (*People ex rel. Younger* v. *County of El Dorado* (1979) 96 Cal.App.3d 403, 407 [157 Cal.Rptr. 815]; see also *Lane* v. *City of Redondo Beach* (1975) 49 Cal.App.3d 251, 257 [122 Cal.Rptr. 189].) ■ Section 8.02(a)23 does not entirely foreclose public access to the bay; rather by its plain terms it only discriminates in favor of recreational use at the expense of commercial access. Such a resolution of competing demands on limited facilities ·protects public access to navigable waters, as required by article X, section 4. It is also well within the express provisions of Harbors and Navigation Code section 660, allowing regulation of "special-use areas."

B. The Port Director's Discretion Is Subject to an Ascertainable Standard.

■ Under the separation of powers doctrine, any statute which delegates discretion to an administrative officer must also provide the officer with ascertainable guidance in exercising his authority. (*Stoddard* v. *Edelman* (1970) 4 Cal.App.3d 544, 548 [84 Cal.Rptr. 443].) ■ Admittedly there are no express standards which guide the Director's discretion in granting exceptions to section 8.02(a)23. However, "[S]tandards for administrative action can sometimes be found by implication. In *Rescue Army* v. *Municipal Court*, 28 Cal.2d 460, 471 . . ., where an ordinance requiring a permit was involved, we held that sufficient standards were inherent in the reasons which must have led to the adoption of the ordinance. In the present case it is clear that the purpose of controlling taxicab stands by issuance of permits is to

---

[3]Under article X, section 4, the Legislature is obligated to ensure that "access to the navigable waters of this State shall be always attainable for the people thereof." Government Code section 39933 provides that all navigable waters adjacent to any city "shall remain open to the free and unobstructed navigation of the public."

make satisfactory and orderly taxicab service readily available to the public without unnecessary obstruction of traffic. This purpose supplies standards which the chief of police must observe in granting or denying the permits. It is difficult to see how, as a practical matter, any additional standards could be set forth which would promote the objective of the ordinance, and nothing would be accomplished by requiring that the standards which are implied must be made express." (*In re Petersen* (1958) 51 Cal.2d 177, 185-186 [331 P.2d 24, 77 A.L.R.2d 1291].)

In this case the discrimination against commercial use of the facilities at Chula Vista Bayfront Park, which is expressed in section 8.02(a)23, provides the Director with an implied standard: any commercial activity he permits must not interfere with the recreational use the District is attempting to protect. This restraint on the Director's authority, satisfies the separation of powers doctrine. (*In re Petersen, supra,* 51 Cal.2d 177, 185-186; *Stoddard v. Edelman, supra,* 4 Cal.App.3d at p. 549.)

C. There Was No Evidence the Defendants Were Carrying Passengers.

■ Although section 8.02(a)23 does not define passengers, section 651, subdivision (p) of the Harbors and Navigation Code provides that: " 'Passenger' means every person carried on board a vessel other than any of the following:

"(1) The owner or his representative.

"(2) The operator.

"(3) Bona fide members of the crew engaged in the business of the vessel who have contributed no consideration for their carriage and who are paid for their services.

"(4) Any guest on board a vessel which is being used exclusively for pleasure purposes who has not contributed any consideration, directly or indirectly, for his carriage."

In order to enforce the passenger proscription set forth in section 8.02(a)23, the District must show that any alleged violator was carrying passengers within the meaning of Harbors and Navigation Code section 651, subdivision (p). Were we to hold otherwise, section 8.02(a)23 would prohibit recreational uses as well as commercial ones. Such a broad prohibition would run afoul of article X, section 4 of the California Constitution. (See *People ex rel. Younger* v. *County of El Dorado, supra,* 96 Cal.App.3d at p. 407.) In

addition, under such an interpretation of the section, the Director would be left without any standard by which to review permit applications.

Because the People presented no evidence that the individuals on board the defendants' vessels paid any consideration for their carriage, the convictions must be reversed.

Judgments reversed.

Wiener, Acting P. J., and Butler, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 17, 1987.