OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 89-503 |
| of | : | |
| | : | AUGUST 29, 1989 |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
| | : | |
| RODNEY O. LILYQUIST | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE WILLIAM H. IVERS, DIRECTOR, DEPARTMENT OF BOATING AND WATERWAYS, has requested an opinion on the following question:

Where a city operates a boating program on an ocean lagoon, may the use of a boat launching facility on private property adjacent to the lagoon be conditioned upon each boat owner having liability insurance coverage naming the city as an additionally insured party?

CONCLUSION

Where a city operates a boating program on an ocean lagoon, the use of a boat launching facility on private property adjacent to the lagoon may not be conditioned upon each boat owner having liability insurance coverage naming the city as an additionally insured party.

ANALYSIS

In 63 Ops.Cal.Atty.Gen. 874 (1980), we concluded that a city could not impose by ordinance a requirement that boat owners obtain liability insurance coverage naming the city as an additionally insured party in order to participate in the city's boating program on an ocean lagoon located within the city's boundaries.

The present inquiry involves the same city and lagoon,[1] but the city ordinance has since been repealed. Instead, the same liability insurance requirement is imposed upon the use of a boat launching facility located on private property adjacent to the lagoon.[2] Does the repeal of the

_____

[1] The lagoon bed is owned by a private utility company that dredged marshland to create the lagoon. The city leases the lagoon bed from the utility company and operates an extensive recreational use program. (63 Ops.Cal.Atty.Gen. 874, 876, fn. 3 (1980).)

[2] The city has a contractual agreement with the owner of the boat launching facility under which the city receives $1 for each boat launched and the operator allows up to 80 boats to be on the water

1.                                                                                                89-503

ordinance and placing the requirement upon the use of private property merit a different conclusion from the one reached in our 1980 opinion?  We conclude that the present liability insurance requirement violates state law.

The contract between the city and the boat launch owner excludes the identical persons from the city's boating program as were excluded under the former city ordinance.  Those boat owners who do not carry liability insurance, have insurance but cannot add the city as an additionally insured party under the terms of their policies, or do not know of the requirement for naming the city as an additionally insured party are prevented from launching their boats.  Obviously, if every city and county adopted such a requirement, boat owners traveling throughout the state would be faced with substantial barriers in the use of their boats.

We know of no law that requires a city or private property owner to maintain and operate a boat launching facility.  Once the facility is made available to members of the public, however, various provisions of law limit the types of conditions that may be placed upon the public's use.  The activity of boating is of special concern to the Legislature since the Constitution directs the Legislature to protect "the free navigation" of the navigable waters of the state.  Section 4 of article X of the Constitution provides:

> "No individual, partnership, or corporation, claiming or possessing the frontage or tidal lands of a harbor, bay, inlet, estuary, or other navigable water in this State, shall be permitted to exclude the right of way to such water whenever it is required for any public purpose, nor to destroy or obstruct the free navigation of such water; and the Legislature shall enact laws as will give the most liberal construction to this provision, so that access to the navigable waters of this State shall be always attainable for the people thereof."

The Legislature is thus responsible for enacting laws that protect the public's right of access to and use of the navigable waters of the state.[3]  It has done so in part by enacting such laws as Harbors and Navigation Code section 131 ["Every person who unlawfully obstructs the navigation of any navigable waters is guilty of a misdemeanor"],[4] Penal Code section 370 ["anything which . . . unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin . . . is a public nuisance"], and Civil Code section 3479 ["Anything which . . . unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin . . . is a nuisance"].)  With specific regard to navigable waters located within the boundaries of a city, Government Code section 39933 declares:

> "All navigable waters situated within or adjacent to a city shall remain open to the free and unobstructed navigation of the public.  Such waters and the water front of such waters shall remain open to free and unobstructed access by the people from the public streets and highways within the city.  Public streets, highways, and

---

at any given time.

   [3]  The lagoon in question meets the test of navigability.  (See *National Audubon Society* v. *Superior Court* (1983) 33 Cal.3d 419, 435; *Forestier* v. *Johnson* (1912) 164 Cal. 24, 34-40; *People* v. *Truckee Lumber Co.* (1897) 116 Cal. 397, 401; *People* ex rel. *Baker* v. *Mack* (1970) 19 Cal.App.3d 1048, 1050; *Bohn* v. *Albertson* (1951) 107 Cal.App.2d 738, 749-757.)

   [4]  All references hereafter to the Harbors and Navigation Code are by section number only.

other public rights of way shall remain open to the free and unobstructed use of the public from such waters and water front to the public streets and highways."

Because of these constitutional rights of access and navigation, courts have closely scrutinized any attempts to curtail or obstruct the people's use of navigable waters. In *People* ex rel. *Younger* v. *County of El Dorado* (1979) 96 Cal.App.3d 403, for example, the court struck down a county ordinance prohibiting the use of rafts on the American River. The court explained:

"However laudable its purpose, the exercise of police power may not extend to total prohibition of activity not otherwise unlawful. (*Frost* v. *City of Los Angeles* (1919) 181 Cal.22 (ban on supplying water less pure than purest available); *San Diego T. Assn.* v. *East San Diego* (1921) 186 Cal. 252 (ban on operation of hospitals treating infectious or contagious diseases within city limits).) Courts are especially sensitive to infringements upon constitutional rights under the guise of exercise of police power. (See *Scrutton* v. *County of Sacramento* (1969) 275 Cal.App.2d 412, 421.) The public's right of access to navigable streams is a constitutional right. (Cal. Const., art. X, § 4; *Marks* v. *Whitney* (1971) 6 Cal.3d 251.)" (*Id.*, at p. 406.)

In *Lane* v. *City of Redondo Beach* (1975) 49 Cal.App.3d 251, the court recognized that cities were obligated to protect rather than defeat the public's right of access to navigable waters. The court observed:

"The basic purpose in entrusting tidelands to municipalities in trust, is to insure the right of free public access to tidelands or navigable waters. [Citation.] The object of the trust is destroyed if a municipality in the exercise of its admitted municipal power to vacate municipal streets can deprive the public of its right of access to tidelands or navigable waters. The municipality as a trustee of tidelands, is obligated to achieve, not defeat the object of the trust. Its municipal powers must be exercised in a manner which is consistent with its trust duties. It may not use its municipal powers to destroy its trust obligations." (*Id.*, at p. 257.)

We do not question the right of the Legislature to reasonably regulate access to and use of the navigable waters of the state. It may require boats to be registered and licensed. (See Veh. Code, § 9850.) Although it has not done so, the Legislature could require an owner to obtain liability insurance coverage for his or her boat. It could also allow cities and counties to reasonably regulate boating activities within their territorial boundaries.

Indeed, the Legislature has authorized cities and counties to place restrictions upon the navigation of boats, but only under narrowly defined conditions. Subdivision (a) of section 268 provides:

"Counties or cities may adopt restrictions concerning the navigation and operation of vessels and water skis, aquaplanes, or similar devices subject to the provisions of subdivision (a) of Section 660, . . ."

Subdivision (a) of section 660 in turn states:

"The provisions of this chapter, and of other applicable laws of this state, shall govern the use, equipment, and all other matters relating thereto whenever any boat or vessel shall be used on the waters of this state, or when any activity regulated by this chapter shall take place thereon. Nothing in this chapter shall be construed to prevent the adoption of any ordinance, law, regulation or rule relating to vessels

by any entity otherwise authorized by law to adopt such measures, including but not limited to any city, county, city and county, port authority, district or state agency; provided, however, that such measures relating to boats or vessels shall pertain only to time-of-day restrictions, speed zones, special-use areas, and sanitation and pollution control, the provisions of which are not in conflict with the provisions of this chapter or the regulations adopted by the department. Such measures shall be submitted to the department prior to adoption and at least 30 days prior to the effective date thereof."[5]

These statutory grants of regulatory power to local governments cannot, however, be reasonably construed to include conditioning the use of a vessel upon the obtaining of liability insurance coverage for a city or county. (63 Ops.Cal.Atty.Gen. 874, 876-877 (1980).)

In *Tellis* v. *Municipal Court* (1970) 5 Cal.App.3d 455, the court upheld a county ordinance requiring boat owners to obtain permits to live aboard their boats. The court found express authority in section 660 for such a "sanitation and pollution control" regulation. (*Id*., at p. 458.) Unlike *Tellis*, a liability insurance requirement does not fit within any of the areas of regulation authorized by sections 268 or 660.

The fact that the boat launching facility is located on private property is irrelevant for purposes of these statutory grants of power. Use of the facility requires use of the lagoon; the latter is the sole purpose of the former. The two activities are inexorably connected and are not reasonably divisible. The boat launch operator is not acting independently of the city when requiring the liability insurance coverage naming the city as an additionally insured party. We find no meaningful distinction here between the city imposing the requirement by ordinance or by contract.

What the city must do under its constitutional and statutory mandate is to facilitate access to and navigation of the lagoon. The liability insurance requirement for coverage of the city's interests is instead an unreasonable impediment to access and use of the lagoon. Only those who know of and are able to obtain the specified coverage may launch their boats. As we previously stated, "If each county and city operating a boating program were free to adopt the type of ordinance provision in question, a boat owner traveling throughout the state would be faced with substantial barriers in the use of his boat." (63 Ops.Cal.Atty.Gen. 874, 878 (1980).)

Hence, the adverse effect of the insurance requirement "'on the transient citizens of the state outweighs the possible benefit to the municipality.'" (*Ibid*.) In this regard, we acknowledged in our prior opinion the "benefit" to the city of the insurance requirement but noted that "a city may insure against its own negligent liability and pass on the costs of such a 'management' and 'maintenance' cost to those benefiting from the program." (*Id*., at pp. 878-879.) This would also be true for fees covering the cost of a self-insurance program. Moreover, it should be recognized that the Legislature has provided a statutory immunity from liability for public agencies operating recreational programs under a variety of circumstances. (Gov. Code, §§ 831.2-831.7.)

---

[5] The "department" is the Department of Boating and Waterways. (§ 32.)

In answer to the question presented, therefore, we conclude that where a city operates a boating program on an ocean lagoon, the use of a boat launching facility on private property adjacent to the lagoon may not be conditioned upon each boat owner having liability insurance coverage naming the city as an additionally insured party.

\* \* \* \* \*