Filed 5/29/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TIMOTHY JAMES DUMMER, Plaintiff and Appellant, v. CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents. | A172588 (Alameda County Super. Ct. No. 23CV036826) |

The question presented is whether plaintiff Tim Dummer is entitled to a writ of mandate compelling the public entity defendants to obtain an amended water supply permit and open the Calaveras Reservoir—immediately and in its natural state—to public fishing. Dummer contends a writ is appropriate because defendants have a ministerial duty to act under provisions of the Fish and Game Code, the Health and Safety Code, and various constitutional provisions, and have failed to do so.

Our review of the relevant laws leads us to conclude that Dummer has not established a right to mandamus relief. Specifically, he has not demonstrated defendants' failure to perform a ministerial duty. We will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Dummer is a licensed California fisherman who has long sought access to fish at the Calaveras Reservoir.

1

Defendants are the City and County of San Francisco and the San Francisco Public Utilities Commission ("SFPUC").[1]  The City is the owner of the Calaveras Reservoir, which is located in the counties of Alameda and Santa Clara and contains fish species including resident rainbow and anadromous steelhead trout.  The reservoir provides drinking water to 2.7 million residents across several Bay Area counties and is part of a watershed governed by the Alameda Watershed Management Plan.  SFPUC adopted the management plan in April 2001 after conducting an environmental review pursuant to the California Environmental Quality Act (Pub. Res. Code, § 21000 et seq.; "CEQA").  The plan's purpose is "to provide for improved management of the watersheds to meet the primary goal of water quality protection as well as the secondary goals of watershed management."  The plan currently prohibits public access and fishing at the Calaveras Reservoir.

### A. Dummer I

In 2019, Dummer filed a petition for writ of mandate seeking to compel the City to immediately determine that public fishing would not affect the purity and safety of the water at the Calaveras Reservoir and to obtain a valid water supply permit setting forth the terms and conditions upon which public fishing at the reservoir may be conducted ("*Dummer I*").  Dummer raised claims under the California Constitution, the Fish and Game Code, and the Health and Safety Code.

At the hearing on the matter, the trial court recognized, first, the public right to fish in a reservoir is a qualified right, and second, the issue is whether public fishing could occur in the Calaveras Reservoir without

---

[1]     Defendant SFPUC is a department of defendant City and County of San Francisco that manages essential services related to drinking water and wastewater.  Hereafter, defendants are collectively referred to as "the City."

2

affecting the water's purity. Viewing the matter as not necessarily presenting "a simple yes-or-no proposition," the court stated the City would need to consider a fishing program specific to the Calaveras Reservoir with potential time, place, and manner restrictions, as well as what facilities would be needed. The court elaborated as follows. If the City determines that public fishing will not prevent the delivery of pure drinking water with an appropriate fishing program in place, the City would then be "obligated" under Health and Safety Code section 117045 to propose such a program with an appropriate environmental evaluation under CEQA and to include whatever program terms and conditions the City deems necessary in its application to the State Water Resources and Control Department ("SWRCB") for an amended water supply permit. At that point, SWRCB will consider whether to issue a permit with the City's proposed terms and conditions.[2] The court ultimately ruled the City had a present ministerial duty to determine "whether fishing in the reservoir is something that can be accomplished without affecting the purity of the water" provided to users, but it emphasized the City had no other ministerial duties to perform at that point.

Consistent with its oral pronouncements, the trial court issued an order granting Dummer's petition with a finding that the City had "a present ministerial duty to make a determination as to whether fishing in the Calaveras Reservoir can be accomplished without 'affect[ing] the purity and safety for drinking and domestic purposes of the water collected in the reservoir' under Health & Safety Code § 117045." The court ordered the City

---

[2] For purposes of this appeal, we accept the parties' mutual understanding that SWRCB oversees the water supply permit process set forth in the Health and Safety Code statutes and regulations discussed herein.

"to commence the evaluation required to make such determination immediately," taking into consideration "all of the variables described in Health & Safety Code §§ 117040, 117045, 117050, 117055, 117060 and 117065."

The City thereafter complied with the trial court's order. In Resolution 22-0135, the City determined: "[S]ubject to the results of any CEQA review and the analysis of the State's Office of Drinking Water [a division of SWRCB], . . . shoreline fishing by the public can occur under terms to be set by [SFPUC's] General Manager without affecting the purity and safety for drinking and domestic purposes of the water collected in Calaveras Reservoir." The resolution further reflected the City's authorization of its General Manager "to develop the terms and conditions of a fishing program, obtain the City Planning Department's review of that program under CEQA; request an amendment to the drinking water permit from the State's Office of Drinking Water; and present to [the City] proposed amendments to the 2000 Alameda Watershed Management Plan to allow limited public shoreline fishing at Calaveras Reservoir."

### B. The Instant Lawsuit

After adopting Resolution 22-0135, the City started planning for a fishing program at the reservoir. The City determined that instituting a fishing program would require improvements designed to ensure the safety of the public and staff, protect the watershed and drinking water quality, and safeguard SFPUC infrastructure. Proposed improvements included widening the existing access road to create safe travel conditions, expanding the existing paved landing area to accommodate public parking and restrooms, adding security fencing to protect existing infrastructure and prevent trespass, and installing signage to direct visitors to the public access areas.

4

Upon learning the Calaveras Reservoir would not immediately open for fishing while the City considered the necessity and parameters of a fishing program, Dummer filed a petition for writ of mandamus and complaint for declaratory and injunctive relief, and damages. Dummer sought to compel the City to perform the following acts, which he contends are mandatory and ministerial: (1) obtain the requisite water supply permit from SWRCB pursuant to Health and Safety Code section 117045; and (2) provide public access for fishing during open season pursuant to Fish and Game Code section 5943 and California Constitution, article I, section 25 and article X, sections 2 and 4. He also sought the City's prompt performance of additional "incidental" actions such as "consulting with agencies, developing a fishing program (where required by law), completing environmental review or negative declaration, amending an existing drinking water permit, and providing correct signage regarding public access and fishing rules versus trespass."

The trial court denied Dummer's petition, concluding he failed to identify any breach by the City of a ministerial duty. In sum, the court determined (1) the Health and Safety Code and implementing regulations impose no mandatory time requirement for the City to submit an application for a water supply permit; (2) the Fish and Game Code does not entitle Dummer to immediate fishing access at the reservoir before the City satisfies other legal requirements; and (3) the California Constitution does not impose a ministerial duty to open up a reservoir for fishing in violation of state statutes and implementing regulations.

The trial court also ruled the City did not abuse its discretion in failing, at that point in time, to have applied for an amended water supply permit. In so concluding, the court noted the City's ongoing efforts "to address and

5

resolve preconditions" necessary to an amended water supply permit, including a description of the terms and conditions for public fishing, a CEQA evaluation of the anticipated fishing program, amendment of the Alameda Watershed Management Plan, and submission of an application to SWRCB to amend the water supply permit.

After Dummer voluntarily dismissed his claim for damages, the trial court entered a final judgment. Dummer appealed.

## DISCUSSION

### A. Requests for Judicial Notice

Both sides filed requests for judicial notice, which we now address.

The City requests judicial notice of four documents filed in *Dummer I*: Dummer's petition for writ of mandate; a transcript of the writ hearing held on November 19, 2021; the trial court's January 21, 2022 order and judgment granting Dummer's petition for writ of mandate; and the trial court's September 21, 2022 order overruling Dummer's objection to the return of writ. The City also requests judicial notice of a blank "State Water Resources Control Board, Water Supply Permit Environmental Intake Form (EIF)" and excerpts reflecting SFPUC's "Biennial Budget FY 2024-25 and FY 2025-25, Water Enterprise, January 29, 2024." Dummer has no objection to the City's request. We grant judicial notice of the four *Dummer I* documents. (Evid. Code, § 452, subd. (d).) We deny judicial notice of the SWRCB intake form and SFPUC budget excerpts as unnecessary and unhelpful to our resolution of this appeal. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 (*Jordache Enterprises*).)

For his part, Dummer requests judicial notice of nine documents for which judicial notice in the trial court was requested but never ruled on. The first three pertain to orders and pleadings filed in *Dummer I*. The City does

6

not oppose this part of Dummer's request, and we grant judicial notice of the three *Dummer I* documents. (Evid. Code, § 452, subd. (d).)

Dummer also requests judicial notice of: a page on a website maintained by the California Department of Fish and Wildlife providing certain details of the Calaveras Reservoir; an online property profile for the Calaveras Reservoir; a blank SWRCB application for domestic water supply permit amendment; a document referencing an "indenture" between Spring Valley Water Company and the County of Santa Clara, dated December 13, 1917; and a document entitled 2024–2025 California Freshwater Sport Fishing Regulations, Updated September 12, 2024. We deny judicial notice of these five documents, as they are unnecessary and unhelpful to the issues in this appeal. (*Jordache Enterprises*, *supra*, 18 Cal.4th at p. 748, fn. 6.)

Finally, Dummer requests judicial notice of the California Fish and Game Commission's "Negative Declaration for Proposed Simplification and Amendments to Statewide Inland Sport Fishing Regulations, Title 14, California Code of Regulations" dated August 2020. (Capitalization omitted.) Although the City filed an opposition to this request, both parties cite and discuss the negative declaration in their briefing on appeal. We find it appropriate to grant judicial notice of this document, as it reflects an official act of the Commission that bears on the merits of the appeal. (Evid. Code, § 452, subd. (c).)

**B. Standard of Review and the Applicable Statutory Schemes**

The ultimate question in this appeal is whether Dummer is entitled to a writ of mandate compelling the City to immediately apply for an amended water supply permit and open the Calaveras Reservoir, in its natural state without improvements, to public fishing. Dummer contends a writ is

7

appropriate because the City has a clear and present ministerial duty to act and has failed to do so.

To obtain mandamus relief under Code of Civil Procedure sections 1085 and 1086, "the petitioner must show (1) a clear, present, ministerial duty on the part of the respondent and (2) a correlative clear, present, and beneficial right in the petitioner to the performance of that duty." (*Alliance for a Better Downtown Millbrae v. Wade* (2003) 108 Cal.App.4th 123, 129; see *Los Angeles County Prof. Peace Officers' Assn. v. County of Los Angeles* (2004) 115 Cal.App.4th 866, 869.) " 'A ministerial duty is an act that a public agency or officer is required to perform in a prescribed manner in obedience to the mandate of legal authority without regard to any personal judgment concerning the propriety of the act.' " (*Water Audit California v. Merced Irrigation Dist.* (2025) 111 Cal.App.5th 1147, 1181 (*Water Audit California*) [quoting *Siskiyou Hospital, Inc. v. County of Siskiyou* (2025) 109 Cal.App.5th 14, 41].)

Though mandamus is appropriate to compel a public entity to exercise its discretion as lawfully prescribed, it cannot be used to compel the exercise of discretionary powers in a particular manner. (*Water Audit California*, *supra*, 111 Cal.App.5th at pp. 1180–1181; *AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 704 (*AIDS Healthcare*).) The use of mandatory language in a statute creating a duty does not necessarily mean the duty is ministerial; instead, " 'the duty is discretionary if the [public entity] must exercise significant discretion to perform the duty.' " (*Mooney v. Garcia* (2012) 207 Cal.App.4th 229, 233.)

Resolving Dummer's mandamus claim requires that we interpret and assess the applicability of various statutory and constitutional provisions, which we undertake de novo. (*People v. Blackburn* (2015) 61 Cal.4th 1113,

1123.)  However, we apply the substantial evidence standard in reviewing the trial court's factual findings, such as its finding that the City was engaging in ongoing efforts to address and resolve preconditions for its water supply permit application at the time Dummer filed his petition.  (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 493.)

### C. Statutory and Constitutional Law

Relevant here are at least three statutory schemes and their implementing regulations:  (1) the Fish and Game Code, which authorizes a public right to access for fishing in reservoirs; (2) the Health and Safety Code, which protects the safety of drinking water supplied to the public from reservoirs open to public fishing; and (3) CEQA, which mandates that public agencies assess and mitigate the environmental impacts of proposed projects.

Section 5943 of the Fish and Game Code provides the following statutory authority for the public right to fish in a reservoir:  "The owner of a dam shall accord to the public for the purpose of fishing, the right of access to the waters impounded by the dam during the open season for the taking of fish in the stream or river."  (Fish & G. Code, § 5943, subd. (a).)  This right is made expressly subject to regulations of the Fish and Game Commission ("the Commission").  (*Ibid*.)  "[I]n connection with the duty to accord access for fishing, section 5944 of the Fish and Game Code provides that an owner 'is not liable in damages to any person exercising the right to fish, who suffers any injury through coming in contact with, or tampering with, any of the property of the owner of the dam.'"  (*State of California v. San Luis Obispo Sportsman's Assn.* (1978) 22 Cal.3d 440, 449, fn. 7 (*SLO Sportsman's*).)

In 2020, the Commission considered the promulgation of statewide regulations that would authorize year-round fishing at the Calaveras

9

Reservoir and other inland waters throughout California.  Pursuant to CEQA, the Commission analyzed the environmental impacts of such regulatory changes and issued a negative declaration concluding the changes would not have a significant or potentially significant effect on the environment.  Regulations were then adopted that define fishing methods and gear restrictions, open season, and location and species restrictions. (Cal. Code Regs., tit. 14, § 7.50.[3])  One such regulation specifies the Calaveras Reservoir is open to fishing all year, but only on a catch-and-release basis and only with use of "artificial lures with barbless hooks."  (Tit. 14, § 7.50, subd. (b)(2)(A)(1)(c).)

Meanwhile, and as a general matter, section 115830 of the Health and Safety Code makes clear that "[a]ll water supply reservoirs of a public agency . . . shall be open for recreational use by the people of this state, *subject to the regulations of the* [*State Department of Health Services*]."  (Italics added.)  On a more specific level, other provisions of the Health and Safety Code operate to ensure that public fishing, as a recreational activity, may occur without compromising "the purity of the water supplied from the reservoir to domestic users."  (*SLO Sportsman's*, *supra*, 22 Cal.3d at p. 452.)  Health and Safety Code section 117040 provides that a public agency "owning or operating a reservoir used for domestic or drinking water purposes[] may open to public fishing all or any part of the reservoir and its surrounding land."  Before doing so, the public agency owner ("public owner") must first "determine that the public fishing will not affect the purity and safety for drinking and domestic purposes of the water collected in the reservoir."  (Health & Saf. Code, § 117045.)  Once that determination has been made, the public owner

---

[3]     Unless otherwise indicated, all references to titles are to titles in the California Code of Regulations.

"shall obtain" from SWRCB "a valid water supply permit setting forth the terms and conditions upon which public fishing may be conducted in the reservoir and on its surrounding land." (*Ibid.*)

The regulations governing the water supply permit process are located in Title 17 of the California Code of Regulations and were adopted pursuant to the authority now found in Health and Safety Code section 115830. (Tit. 17, §§ 7625–7627, 7629.) As a starting point, the regulations expressly state that any "[r]ecreational use on and around a domestic water supply reservoir is prohibited unless specifically authorized in a water supply permit." (Tit. 17, § 7626, subd. (a).) Where, as here, a public owner's water supply permit does not authorize a particular recreational use, such as fishing, the owner must apply for a permit modification allowing such use. (*SLO Sportsman's, supra,* 22 Cal.3d at p. 451, fn. 10; see Tit. 17, §§ 7626, 7627.) Permit applications must include maps showing the reservoir area, including the "area to be open for recreational use and location of sanitary facilities to be provided for the public"; data on the reservoir's size and site topography, wind-induced currents, and other factors potentially affecting "the quality of the stored water and movement of possible contaminants to the water intake"; a description of "the type of recreational use proposed" and the maximum number of persons, cars, and vehicles allowed in the area; and a description of the public owner's "program, personnel and financing to control the recreational use, including maintenance and operations of recreational and sanitary facilities, and supervision of the people permitted in the area." (Tit. 17, § 7627, subd. (a)(1)–(5).[4]) When SWRCB finds the

_____

[4] Dummer suggests this regulation may no longer be valid because it was authorized by statutes that were later repealed. He is wrong. As reorganized in 1995, nearly all the repealed Health and Safety Code authority and reference sources listed for title 17, section 7627 were reenacted with new

11

intended recreational use will not render the water supply "impure, unwholesome or unpotable," a "permit for such use will be issued." (Tit. 17, § 7629.)

Apart from the foregoing, there may be other statutory or regulatory schemes that are implicated in the management of watersheds that include reservoirs or for projects proposed on watershed lands. CEQA, in particular, embodies "California's strong public policy of protecting the environment" (*Tomlinson v. County of Alameda* (2012) 54 Cal.4th 281, 285) and must " ' "be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language" ' " (*Sierra Club v. County of Fresno* (2018) 6 Cal.5th 502, 511). CEQA review appears necessary where, as here, a watershed management plan requires amendment to allow for a new recreational activity within the watershed. In this regard, a Health and Safety Code regulation expressly stipulates that for "a 'project' as defined in Section 15378, Title 14, California Code of Regulations[5] where environmental documentation is required, a copy of such

---

numbering. As relevant here, former sections 208 and 4051 of the Health and Safety Code, which prior to 1995 were identified as statutory *authority* for title 17, section 7627, are now Health and Safety Code sections 100275 and 115830, respectively. (See Stats. 1995, ch. 415, pp. 13, 505 (Sen. Bill No. 1360).) Indeed, all the water supply permit regulations cite Health and Safety Code section 115830 (or its predecessor) as authority. Moreover, former section 4463 of the Health and Safety Code, which prior to 1995 was identified as one of the statutory *references* for title 17, section 7627, is now Health and Safety Code section 117045. (Stats. 1995, ch. 415, p. 560 (Sen. Bill No. 1360).)

5       This is a CEQA regulation that defines " 'Project' " to include "[a]n activity directly undertaken by any public agency including but not limited to public works construction and related activities clearing or grading of land, improvements to existing public structures, . . . and the adoption and

documentation shall be included in the [permit] application." (Tit. 17, § 7626, subd. (b).)

Finally, article I, section 25 of the California Constitution recognizes "the right to fish" in certain waters and proclaims "no law shall ever be passed making it a crime for the people to enter upon the public lands within this State for the purpose of fishing in any water containing fish that have been planted therein by the State." The parties dispute this provision's applicability to the Calaveras Reservoir. (See discussion, *post*.)

**D. Analysis**

As indicated, Health & Safety Code section 117045 provides that, before opening a reservoir to public fishing, a public owner "shall determine that the public fishing will not affect the purity and safety" of the reservoir's water and "*shall obtain from* [*SWRCB*] *a valid water supply permit setting forth the terms and conditions upon which public fishing may be conducted.*" (Italics added.) Seizing on the italicized language, Dummer contends SWRCB—not the public owner of a reservoir—is the body responsible for determining the terms and conditions of a water supply permit. As Dummer reads this statute, once the City determined public fishing could occur in the Calaveras Reservoir without affecting the purity and safety of its water, the City had a ministerial duty to immediately obtain an amended water supply permit from SWRCB and open the reservoir, in its natural condition, to fishing. In Dummer's view, the City had no discretion to delay submission of a permit application pending its efforts to consider what terms and conditions may be necessary or convenient to the conduct of fishing activity at the

amendment of local General Plans or elements thereof pursuant to Government Code Sections 65100–65700." (Tit. 14, § 15378, subd. (a)(1).)

13

reservoir. For the reasons below, we cannot agree with Dummer's reading of the record or his view of the applicable statutory schemes.

To begin with, the City did not conclude public fishing could safely and immediately occur at the Calaveras Reservoir without further steps. Rather, as the record reflects, the City made a determination that fishing "can occur" at the reservoir without affecting water purity and safety "subject to the results of any CEQA review and the analysis of [SWRCB]" pursuant to "terms to be set by [SFPUC's] General Manager."

Moreover, and contrary to Dummer's suggestion, the relevant Health and Safety Code provisions contain no language preempting other potentially applicable statutory schemes such as CEQA. For instance, Health and Safety Code section 117045 includes no language either excusing a public owner's compliance with other applicable laws or specifying a particular submission timeline or deadline for permit applications. Nor does it employ phrasing indicating it applies "notwithstanding any other law." (*In re Greg F.* (2012) 55 Cal.4th 393, 406 [when Legislature intends for a statute to prevail over all contrary law, it typically signals this intent by using such a phrase].)

By its terms, Health and Safety Code section 117045 tasks SWRCB with making the ultimate determination of the terms and conditions to be included in a water supply permit. However, we reject Dummer's theory that the statute operates to deprive a public owner of authority to evaluate—and discretion to decide—what terms and conditions the owner deems appropriate to propose in its application for such a permit.

As indicated, Health and Safety Code section 117045 expressly requires that water supply permits obtained from SWRCB set forth "the terms and conditions upon which public fishing may be conducted in the reservoir and on its surrounding land." Additionally, Health and Safety Code section

14

117060 authorizes a public owner to contract with other governmental agencies and private individuals for "the construction, operation and use of structures, facilities and equipment and the performance of services *necessary or convenient to public fishing in the reservoir and on its surrounding land,*" including structures and facilities "*necessary or convenient for the use of the public.*" (Italics added.) That these statutes contemplate discretionary action on the part of public owners is reinforced in the regulatory permitting process.

Importantly, Health and Safety Code section 115830 makes clear that recreational uses on water supply reservoirs are subject to the permitting regulations contained in Title 17, which ensure SWRCB can intelligently exercise its permitting authority. Regulations require that applications to allow recreational uses "shall" include a host of detailed information, including a description of the public owner's "program . . . to control the recreational use, including maintenance and operations of recreational and sanitary facilities, and supervision of the people permitted in the area" (Tit. 17, § 7627, subd. (a)(5)), as well as environmental documentation when the program qualifies as a " 'project' " under CEQA (Tit. 17, § 7626, subd. (b)). Since all such information and documentation must be submitted with a permit application, the permitting scheme can only be understood as requiring a public owner to evaluate and propose programmatic elements for controlling public fishing in its reservoir, including those that require the owner's compliance with environmental laws such as CEQA. (Health & Saf. Code, §§ 117040, 117045, 117060; Tit. 17, § 7626, subd. (b).) Critically, these requirements enable SWRCB to make informed decisions regarding the terms and conditions of any permit it approves.

15

Dummer also focuses on the language in Fish and Game Code section 5943 stating the public right to fish is subject to the regulations of the Fish and Game Commission. He then highlights the Commission's CEQA review in 2020 that resulted in its negative declaration and adoption of regulations authorizing year-round fishing at the Calaveras Reservoir and elsewhere. (See Tit. 14, § 7.50, subds. (a), (b)(2)(A)(1)(c).) Dummer essentially argues that, in view of the regulatory reference in Fish and Game Code section 5943, the City is bound to comply with the Commission's regulatory authorization of public fishing at the Calaveras Reservoir without a fishing program or site improvements. We are not persuaded.

As described in the negative declaration, the "project" reviewed by the Commission focused on a suite of regulations that would maintain "sufficient populations of all aquatic species to ensure their continued existence," as guided by goals including the maintaining or increasing of "angling opportunity." To accomplish this, the project specifically aimed "to increase regulatory consistency statewide, reduce complexity of the inland sport fishing regulations, and remove regulations that are no longer biologically justifiable." It was in this context that the 2020 CEQA review found "no substantial evidence" that the Commission's regulatory project—i.e., proposed changes to trout fishing restrictions such as "seasons, bag limits, size limits, and/or gear restrictions"—will "result in a significant effect on the environment." But because that particular project, in and of itself, did not require or call for any new facilities, construction, land alteration, or land use changes, there was no need or occasion to review the environmental effects of proposed infrastructure and facilities that might be necessary to ensure that fishing could occur without compromising the purity of the reservoir water and the safety and welfare of the public. We may reasonably surmise that

16

type of individualized project review was left to reservoir owners when complying with the Commission's new regulations, the Health and Safety Code and its permit application process, and CEQA.

Dummer also relies on a state constitutional provision that recognizes "the right to fish" and prohibits laws "making it a crime for the people to enter upon the public lands within this State for the purpose of fishing in any water containing fish that have been planted therein by the State." (Cal. Const., art. I, § 25.) As Dummer sees it, this constitutional provision, together with Fish and Game Code section 5943, guarantees a public right to fish and deprives a public owner of any authority or discretion to delay its permit application while it considers what terms or conditions are appropriate for controlling the conduct of fishing at the reservoir.

As a preliminary matter, we note the City contends the constitutional provision does not apply to county-owned lands such as where the Calaveras Reservoir is situated. But the parties' disagreement on this point is of no consequence, and here is why. Even assuming the constitutional provision's applicability, neither that provision nor Fish and Game Code section 5943 contains language purporting to guarantee an unrestricted right to fish without regard to regulatory requirements or other important state interests, such as addressing potentially significant environmental concerns.[6]

*SLO Sportsman*'s, *supra*, 22 Cal.3d 440, provides helpful guidance on this point. There, the trial court had entered a judgment ordering the public entity appellants "to provide adequate public access for fishing" and "to establish, operate, and maintain a public recreational fishing program at the

_____

[6] Indeed, had the Commission believed the Fish and Game Code and state Constitution guarantee a public right to fish without regard to potential environmental concerns, it would not have undertaken CEQA review of its proposed statewide regulations.

17

reservoir." (*SLO Sportsman's*, at p. 444.) The California Supreme Court affirmed, holding the appellants had a duty to provide "a fishing program consisting of sanitary facilities and surveillance," which the court deemed necessary to fulfill the appellants' dual obligations "to provide access to the public for fishing under article I, section 25 of the California Constitution and under section 5943 of the Fish and Game Code" and "to protect the purity of the water supplied from the reservoir to domestic users" as required by the Health and Safety Code. (*SLO Sportsman's*, at pp. 452–453.) As part of its analysis, the high court found it undisputed that the entire reservoir need not be opened to fishing, commenting that "the nature and extent of the sanitary facilities and surveillance that must be provided depends to a great extent on the amount of access provided for fishing." (*Id.* at p. 453; see Health & Saf. Code, § 117040.) In that regard, the court reviewed the trial court's approval of a fishing program that had been proposed during the parties' settlement discussions and concluded such approval should not be interpreted "as requiring any more supervision and facilities than that deemed necessary by the State Department of Health Services to protect the purity of the water." (*SLO Sportsman's*, at p. 453.)

As *SLO Sportsman's* explains, the public right to fish "must yield in appropriate factual situations to *the reasonable exercise of the state's inherent police power to protect public safety and welfare.*" (*SLO Sportsman's*, *supra*, 22 Cal.3d at p. 448, relying on *In re Quinn* (1973) 35 Cal.App.3d 473, 486, italics added.) And though the decision did not address the issue of CEQA-imposed mandates, we conclude the quoted passage reasonably encompasses not only our state's interest in protecting water purity but also its strong public policy of protecting the environment.

18

Dummer also claims fishing access is guaranteed under the public trust doctrine embodied in article X, section 4 of the California Constitution, which applies to "navigable water."[7] The parties, however, dispute whether the public trust doctrine applies to the Calaveras Reservoir, which is an artificial body of water. But even assuming, solely for purposes of argument, the doctrine's applicability, none of Dummer's cited authorities suggests a basis for relief on the facts here.[8]

---

[7]     Article X, section 4 of the California Constitution provides: "No individual, partnership, or corporation, claiming or possessing the frontage or tidal lands of a harbor, bay, inlet, estuary, or other navigable water in this State, shall be permitted to exclude the right of way to such water whenever it is required for any public purpose, nor to destroy or obstruct the free navigation of such water; and the Legislature shall enact such laws as will give the most liberal construction to this provision, so that access to the navigable waters of this State shall be always attainable for the people thereof."

[8]     Cases cited by Dummer include *Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection* (2008) 44 Cal.4th 459, 515 (public trust in wildlife not violated where Department of Fish and Game, through statutory "Incidental Take Permit" process, maintained authority to review lumber company's site-specific decisions regarding preservation of owl habitat); *National Audubon Society v. Superior Court* (1983) 33 Cal.3d 419, 435 (doctrine protects navigable waters from harm caused by diversion of nonnavigable tributaries); *Colberg, Inc. v. State ex rel. Dept. of Public Works* (1967) 67 Cal.2d 408, 426 (plaintiffs not entitled to compensation for any diminution of their right of access to navigable waters resulting from lawful exercise of state's power to regulate such waters); *People ex rel. Younger v. County of El Dorado* (1979) 96 Cal.App.3d 403, 407 (county's "total prohibition" of rafting and boating denied "constitutional right of the public to use of and access to a navigable stream"); and *People ex rel. Baker v. Mack* (1971) 19 Cal.App.3d 1040, 1043–1044 (under Civ. Code, § 3479, private owners' fencing that prevented recreational access to navigable stream was properly enjoined as a public nuisance).

Dummer's opening appellate brief additionally mentions sections 2 and 7 of article X of the California Constitution. But Dummer neglects to provide any meaningful legal argument or analysis supported by case law to

In maintaining the City must immediately open the Calaveras Reservoir in its natural state, Dummer further contends there are myriad statutes providing immunity for public access to lands in their natural condition. (E.g., Fish & G. Code, § 5944 [dam owner "is not liable in damages to any person exercising the right to fish, who suffers any injury through coming in contact with" dam owner's property]; Civ. Code, § 846 [recreational use immunity]; Gov. Code, § 831.2 [natural condition immunity].) Dummer, however, offers no authority suggesting the immunity conferred by these statutes either excuses the City from regulatory compliance or deprives the City of discretion to ensure public safety and welfare through necessary or convenient improvements to the reservoir site.

Dummer additionally argues the City's efforts to regulate public access at the Calaveras Reservoir and to use CEQA to delay the immediate opening of the reservoir to fishing violates Water Code section 6026, which provides in part: " 'No city or county has authority . . . to regulate, supervise, or provide for the regulation or supervision of any dams or reservoirs in this state.' " Dummer emphasizes that the Legislature, in adopting this statute, declared its intent " 'to provide for the regulation and supervision of dams and reservoirs exclusively by the State.' " We are unmoved.

As explained, the Health and Safety Code calls for the City's compliance with the regulations in Title 17, which require that recreational uses at sites such as the Calaveras Reservoir be authorized in the public

---

demonstrate error based on these provisions. We need not make his arguments for him. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 [on appeal, trial court's judgment is presumed correct and appellant bears burden to affirmatively establish error justifying reversal].) In light of the competing public safety and welfare concerns addressed by the Health and Safety Code and the CEQA laws, merely quoting the language of these constitutional provisions fails to persuade.

owner's water supply permit and which mandate that an owner's permit application include the type of information and documentation the City is currently gathering.[9] The evident purpose of the City's actions is to propose a CEQA-compliant public fishing program which SWRCB can then consider through the water supply permit process. Dummer's theory that the City is seeking to frustrate SWRCB's regulatory authority is without foundation.

The upshot of the Health and Safety Code provisions at issue is that the law recognizes the authority and discretion of the City to evaluate and determine the terms and conditions it deems necessary to control fishing access at the reservoir, *subject to approval by SWRCB.* (See *SLO Sportsman's, supra*, 22 Cal.3d at p. 453 ["ultimate determination of the facilities and supervision that must be provided is one which rests with" SWRCB].) Dummer offers no authority suggesting mandamus is appropriate to compel the City's immediate submission of a permit application without making its determinations. (Compare *Rutgard v. City of Los Angeles* (2020) 52 Cal.App.5th 815, 821–822 [involving 10-year statutory timeframe for public agency to adopt resolution reauthorizing a taking in the context of eminent domain].) Indeed, his insistence that the City immediately submit a

---

[9] Dummer represented at oral argument that, contrary to his briefing on appeal, he was not seeking a writ of mandate to compel the City to immediately open the Calaveras Reservoir to public fishing. He also agreed that public fishing could not occur at reservoirs without permits issued in compliance with both sections 7626 and 7627 of Title 17. Though Dummer argued these regulations contemplate two different permits requiring the submission of two different applications, the regulatory language is reasonably understood to describe a single permitting process to allow "[r]ecreational use on and around a domestic supply reservoir." (Tit. 17, § 7626, subd. (a); see tit. 17, §7627, subd. (a) [the "application for a permit to allow recreational use shall" describe "the water supplier's program . . . to control the recreational use . . . ."].)

permit application without doing so goes beyond an effort to compel compliance with Health and Safety Code section 117045 and impermissibly attempts to control the City's discretion in determining the appropriate parameters of a proposed fishing program.  (Compare *Water Audit California, supra,* 111 Cal.App.5th at p. 1187 [holding mandamus available to compel dam owner's compliance with non-discretionary statutory duty to keep fish ladder open and unobstructed (Fish & G. Code, § 5935), where plaintiff was not seeking to compel the manner in which the duty is performed].)

Finally, we note the trial court concluded the City's failure to apply for an amended permit at this juncture was not shown to be arbitrary, beyond the bounds of reason, or in derogation of the applicable legal standards.  In support, the court referred to evidence of the City's ongoing efforts to fulfill its obligations under Health and Safety Code section 117045 and CEQA before submitting its permit application to SWRCB.

Dummer disputes the trial court's application of the abuse of discretion standard, arguing it is inapplicable where, as here, the City fails to perform a ministerial duty.  As explained, however, the City had no duty to submit a permit application at the time mandamus relief was sought.  Dummer has not identified a statutory deadline that was supposedly violated, and any such application would have lacked the information and documentation required by the relevant Health and Safety Code sections and regulations.  Though Dummer clearly contests the legal and practical necessity for a fishing program (including any need for sanitary facilities, surveillance, widened roads, or parking lots), substantial evidence supports the trial court's determination that the City was moving forward and taking appropriate steps to identify and document the terms and conditions that would garner SWRCB's approval for a permit.  Based on the City's actions so

22

far, we anticipate the City will act diligently to finish these tasks and submit a permit application once such actions are completed.

In sum, we find no merit to Dummer's appeal. This is not a situation where mandamus or declaratory relief is warranted because a public entity has refused to take any steps toward discharging a statutory duty. (See *AIDS Healthcare*, *supra*, 197 Cal.App.4th at p. 705.)[10] Nothing we say here, however, is intended to foreclose Dummer from seeking available relief should the City or SWRCB act unlawfully or arbitrarily in future stages of the permitting process.

## DISPOSITION

The judgment is affirmed. In the interests of justice, the parties are to bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

---

[10] Dummer makes other assertions in support of a writ of mandate, including: (1) the City cannot "hide behind local regulations" because violations of Fish and Game Code section 5943 and Health and Safety Code sections 117045 are criminal misdemeanors; (2) CEQA does not supersede criminal prohibitions; and (3) reservoir access laws "pre-date CEQA" so access is grandfathered. These assertions are unavailing because they are offered without meaningful legal argument and are premised on a faulty perspective of the applicable statutory schemes, which we have addressed above.

Dummer also cites deposition testimony of City employees, a retired City of San Diego reservoir manager, and an environmental expert, as well as other litigation discovery, in criticizing the City's proposal of an "outrageously small" 450-foot fishing zone at the reservoir, which Dummer contends has a 25.8-mile shoreline. We do not consider such evidence as it has no bearing on the issues in this appeal.

_____
Fujisaki, J.

WE CONCUR:


_____
Tucher, P. J.


_____
Rodríguez, J.

Trial Court:      Alameda County Superior Court

Trial Judge:      Hon. Karin S. Schwartz

Counsel:      Gregory J. Glaser for Plaintiff and Appellant

              David Chiu, City Attorney, Brian F. Crossman and Giulia M. Gualco-Nelson, Deputy City Attorneys, for Defendant and Respondent.

*Dummer v. City and County of San Francisco et al.*  (A172588)